RECEIVED US Dist Court
JUN 19 '20 PM02:53

FILED
2020 JUN 23 AM 8:31
CLERK
U.S. DISTRICT COURT

**DAVID J. HOLDSWORTH** (4052)
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT 84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| DON CLAWSON HILL II, | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED))** |
| Plaintiff, | : | |
| | : | |
| v. | : | Case: 1:20-cv-00071 |
| | : | Assigned To : Jenkins, Bruce S. |
| | : | Assign. Date : 6/19/2020 |
| GSC FOUNDRIES, INC., | : | Description: Hill v GSC Foundries |
| | : | |
| Defendant. | : Hon. | |

COMES NOW, Don Clawson Hill II, Plaintiff herein, by and through his

counsel, David J. Holdsworth, hereby complains of Defendant GSC Foundries, Inc.

(hereinafter "GSC"), demands trial by jury and, as and for causes of action, alleges as

follows:

## I. PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Don Clawson Hill II (hereinafter "Plaintiff") is a citizen

of the United States and a resident of the State of Utah.

2.     The Defendant is GSC Foundries, Inc.  At all times relevant hereto, GSC Foundries, Inc. (hereinafter "Defendant"), employed 15 or more employees.

3.     The Court has subject matter jurisdiction of this case pursuant to federal question.  Plaintiff alleges Defendant took adverse action against him, in violations of the Americans with Disabilities Act ("ADA"), which provides that it is unlawful to discriminate against an employee in his employment on the basis of his disability and to retaliate against an employee for engaging in protected activity.

4.     Plaintiff, by and through his counsel, David J. Holdsworth, brings this civil action against the Defendant alleging violations of the Americans with Disabilities Act, ("ADA"), as amended, which provide that it is unlawful to discriminate against an employee in his employment on the basis of his disability and to retaliate against an employee for engaging in protected activity.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the claims arose in the State of Utah, GSC Foundries, Inc., employed Mr. Hill in the State of Utah; all of the employment practices alleged herein occurred within the State of Utah; and the relevant employment records are maintained in the State of Utah.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

2

6.      On June 6, 2017, Plaintiff filed a Charge of Discrimination with the Utah Labor Commission's Antidiscrimination and Labor Division ("UALD") in which he alleged that Defendant had discriminated against him based on his disability and subjected him to unlawful acts of retaliation.

7.      Plaintiff filed his Charge of Discrimination within 180 days from the last date of the alleged harm.  The Court may consider all events that occurred between December 8, 2016, the 180-day jurisdictional mark, and the date of filing of June 6, 2017.  The Court may treat all other events occurring prior to December 8, 2016 as being untimely for purposes of relief.  However, the Court may give evidence of such events weight for evidentiary purposes.

8.      In the instant case, Mr. Hill's allegations and evidence create disputes about several material facts.  Those disputes include: (1) whether GSC sought to and did afford Mr. Hill a reasonable accommodation for his work-related disability and limitations; (2) whether Mr. Hill unreasonably refused the accommodation GSC may have offered him; (3) whether GSC and Mr. Hill engaged in the disability accommodation interactive process, and, if it broke down, who might be to blame for the breakdown in such process; and (4) whether GSC terminated Mr. Hill's employment for a legitimate, non-discriminatory, non-retaliatory reason, or whether GSC's reason for terminating Mr. Hill's employment is pretextual, supporting an

3

inference that the real, underlying reason for the termination was a discriminatory and/or retaliatory reason.

### III.  STATEMENT OF FACTS

9.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 8 above as if alleged in full herein.

10.    Plaintiff alleges that Defendant hired him on March 2, 2015, to work as a wax injector.  His job duties involved assembling and disassembling wax pattern dies, operating wax injection presses, pulling wax patterns from wax tools, performing a leech out process by placing wax patterns in a citric acid tank, cleaning and inspecting wax parts, and lifting up to 50 pounds occasionally and 25 pounds frequently, and using a hoist to lift heavier items.

11.    On March 23, 2016, Plaintiff suffered a work-related injury in the form of a herniated disc in his spine/back which was diagnosed the following day.

12.    On March 24, 2016, Plaintiff was placed on the following limitations: no lifting, pushing or pulling of objects weighing more than 20 pounds, alternating between sitting and standing every hour for 10 minutes (meaning that if he sat for one hour, he would need to stand for 10 minutes), bending, twisting, squatting, and crouching only occasionally, and a recommendation of desk the work.

4

13.     Plaintiff was unable to return to work from approximately March 24, 2016 until approximately July 8, 2016, and used FMLA leave up to that point.

14.     During Plaintiff's leave of absence, Defendant regularly requested updates on Plaintiff's status and Plaintiff told them each time that his restrictions were permanent. (Plaintiff had also filed a workers' compensation claim related to his condition and as a part of that had provided Defendant with a doctor's note on September 28, 2016, which stated that he had reached "maximum medical improvement".)

15.     On or about July 8, 2016, when Plaintiff returned to work, Plaintiff notified Defendant of his willingness to work within his ongoing restrictions. Defendant placed Plaintiff on light duty in the department in which he worked and assigned him to perform the leech out process and small parts injection. These duties allowed him to perform some of his duties of his regular job while still staying within his limitations and within his department, with the exception that the leech out process does require the lifting of a bag of citric acid weighing approximately 50 pounds, but he could ask another employee to lift the bag for him.

16.     Plaintiff asserts that, while he was working in the wax department after his injury, there was plenty of work in the wax department within his restrictions, which would have kept him busy on a full-time basis.

5

17.     Plaintiff alleges, however, that, on August 29, 2016, Defendant unilaterally moved Plaintiff to the maintenance department to perform duties such as picking up trash, painting, washing windows, and other similar duties. Plaintiff alleges these duties were demeaning and not consistent with his restrictions and he alleges that he could have still been performing light duty work in the wax department.

18.     Plaintiff alleges that his supervisor in the wax department, Kristin Layton ("Layton"), would verify that there was enough work in the wax department for him to have enough to do and to continue his light duty in the wax department.

19.     After Plaintiff returned to work after his injury, he worked in the wax department for almost two months without any problems. He disputes that GSC assigned him to work in other departments because of some interest on the part of GSC in accommodating his work restrictions. On August 29, 2016, GSC moved Plaintiff out of the wax department and into the maintenance department where he performed duties such as picking up cigarette butts, picking up trash, washing windows, and other similar duties. The duties were demeaning and not consistent with his restrictions. Plaintiff could have still been performing light duty work in the wax department. Plaintiff alleges GSC did so to humiliate Plaintiff and in the interest of, hopefully, causing him to quit. He alleges GSC placed him in the maintenance department to punish him for sustaining a work-related injury and exercising his right to pursue a

6

claim for workers' compensation benefits and as a way to retaliate against him. But Plaintiff did not quit.

20.     On October 3, 2016, an engineer approached a Mr. Sandor Scheiss ("Scheiss"), Facilities Maintenance Manager, asking for someone to help scan documents. Scheiss sent Plaintiff to the engineer. The engineer returned to Scheiss and falsely informed him that Plaintiff had refused to help scan documents. Scheiss then tried to find Plaintiff to ask him why he had refused the job. When Scheiss found Plaintiff and questioned him, Plaintiff informed Scheiss that he had not refused the job, but that he wished to go back to the wax department and that he felt that my "federal rights were being violated". Plaintiff was expressing a preference to stay in/return to the wax department.

21.     Scheiss took Plaintiff to meet with Jeremy Matthews ("Matthews"), Plant Manager, where Scheiss explained that Plaintiff had allegedly refused to perform the scanning. Plaintiff denied this and emphasized that it was his belief that employees must be allowed to perform light duty within their department if such were available. Thus, Plaintiff explained that he wanted to return to the wax department, and that he felt like he was being retaliated against by being forced out of the wax department. Matthews then contacted Layton, Plaintiff's supervisor in the wax department, and sent Plaintiff back to work in the wax department.

7

22.     Thus, during the October 3, 2016 meeting with Matthews, Plaintiff made the request to return to the wax department, explaining that he believed the wax department better fit his restrictions. He also informed Matthews that he felt that he was being retaliated against for requesting the accommodation of returning back to the wax department.

23.     Mr. Hill alleges that employees in the maintenance department receive a higher grade of pay than employees in the wax department, but when the company reassigned him to the maintenance department, the company did not give him any kind of pay increase.

24.     GSC never explained why GSC was refusing to pay me what it paid others who worked in the maintenance department when it tried to reassign him to work in the maintenance department. The first Plaintiff learned of this reason for not paying him what it paid others who worked in the maintenance department was after he filed a Charge of Discrimination with the UALD. GSC never told Plaintiff that he didn't possess the education, experience or skills needed to work in the maintenance department.

25.     When Plaintiff worked in the maintenance department, GSC never asked me to do anything other than perform menial jobs — picking up cigarette butts, picking up trash, washing windows and other similar duties.

26.     On October 7, 2016, Kevin Sherman ("Sherman"), Human Resources Manager, met with Plaintiff.

27.     In that October 7, 2016 meeting, Petitioner explained that he preferred to work in the wax department where he had been working prior to his injury, where he had been working after his injury, and where there was sufficient work within his restrictions to keep him busy on a full-time basis.

28.     Plaintiff alleges that he was not interested in working in the maintenance department because he viewed the type of work he had been asked to perform in the maintenance department as punishment for sustaining a workplace injury and for requesting light duty and for complaining of being required to work outside of the wax department and of being assigned menial tasks in the maintenance department.

29.     Sherman then informed Plaintiff that he was being written up for the October 3, 2016 conversation with Matthews, that the company was placing him on a leave of absence, and that it was "not worth it" to the company to accommodate Plaintiff any further.

30.     Thus, on October 7, 2016, Sherman and Matthews met with Plaintiff to issue him a coaching document for his refusal request to return to the wax department and no longer perform duties as assigned in the maintenance department.

9

At that time (not later), the company placed Plaintiff on a leave of absence as punishment for having an injury for which he needed reasonable accommodation and placed Plaintiff on a leave of absence effective October 10, 2016.

31.    GSC's decision to not afford Plaintiff the accommodation he wanted and, instead, to put him on a leave of absence did upset Plaintiff because GSC was refusing to accommodate Plaintiff as it had in the past and as it was able to do. GSC assured Plaintiff that, when the leave was complete, he would still have a job. Plaintiff was not told that not providing updated work restrictions would generate a termination.

32.    Plaintiff's restrictions were permanent.  Plaintiff alleges GSC had access to the restrictions mentioned in the IME report.  Nevertheless, on February 6, 2017, GSC made a request to Plaintiff to provide further medical information regarding his (permanent) work restrictions and gave him an ultimatum of 15 days to return the medical information to it.  Plaintiff alleges that this short turnaround time, with no resources to pay a medical provider to obtain the requested update, were discriminatory and retaliatory.

33.    Plaintiff disputes that he refused to provide the updated medical information requested.  GSC had challenged his workers' compensation claim and had

10

cutoff his wages. Plaintiff had no money to go see a doctor to obtain such requested updated medical information.

34.     Plaintiff alleges he was able to perform the essential functions of the position he held and desired with the reasonable accommodation of being placed on light duty in the wax department. Plaintiff performed light duty in the wax department successfully for a period of time after his injury and return to work. Plaintiff did not abandon his job. GSC just fired him.

35.     Plaintiff agrees that operating wax injection presses and assembling and disassembling tooling was an essential function of the job. But how the wax injector operator accomplishes such function is not an essential function of the job. Plaintiff declares that, in his job, it was not necessary to do any lifting on a regular basis. Thus, Plaintiff disputes as to whether the ability to lift 25 lbs. frequently and 50 lbs. occasionally was an essential function of the job of wax injector operator.

36.     Plaintiff disputes whether the ability to lift 25 lbs. frequently and 50 lbs. occasionally was an essential function of the job of wax injector operator. Plaintiff asserts that operating wax injection presses and assembling and disassembling tooling was an essential function of the job. He also asserts that how the wax injector operator accomplished such function was not an essential function of the job. Plaintiff disputes whether a written job description is dispositive on the factual issue of what the

11

essential functions of a job are. A written job description is just one of the facts a fact

finder may consider in determining the factual issue of what the essential functions of a

job are. 29 C.F.R. § 1630.2 (n). *Holly v. Clairson Industries,* 492 F.3d 1247, 1258

(11th Cir. 2007). The experience of the incumbent in a job is another factor which may

be considered. Mr. Hill asserts that, in his job, it was not necessary to do any heavy

lifting on a regular basis.

37.   Plaintiff could do various tasks which the company had assigned

him to. He just preferred to work in the wax department where he had been working

prior to his injury, where he had been working after his injury, and where there was

sufficient work within his restrictions to keep him busy on a full-time basis.

38.   Plaintiff was not interested in working in the maintenance

department because he viewed the type of work he had been asked to perform in the

maintenance department as punishment for sustaining a workplace injury and for

requesting light duty and for complaining of being required to work outside of the wax

department and of being assigned menial tasks in the maintenance department.

39.   On October 31, 2016, GSC's carrier received the results an

independent medical exam, as a part of Mr. Hill's worker's Compensation claim,

which report stated that Mr. Hill's restrictions had changed to lifting no more than 25

pounds frequently and 50 pounds occasionally, and bending, squatting, kneeling,

climbing, twisting, pushing, and pulling on an occasional to frequent basis.

40.     Despite knowing of Mr. Hill's position that his restrictions were

permanent and despite knowing of the restrictions mentioned in the IME report

mentioned above, on February 6, 2017, GSC made a request to Mr. Hill to provide

further medical information regarding his (permanent) work restrictions and gave Mr.

Hill an ultimatum of 15 days to return the medical information to it, which short

turnaround time with no resources to pay a medical provider to obtain the requested

update, Mr. Hill alleges was discriminatory and retaliatory.

41.     Plaintiff alleges that, on March 20, 2017, Defendant terminated his

employment. Plaintiff alleges that this was done out of retaliation for his requests for

accommodation and otherwise asserting his rights and engaging in protected activity.

42.     Plaintiff alleges he was able to perform the essential functions of

the position he held and desired with the reasonable accommodation of being placed

on light duty in the wax department. Furthermore, Mr. Hill alleges he performed light

duty in the wax department successfully for a period of time after his injury and return

to work. Thus, Mr. Hill alleges he did not abandon his job. GSC fired him.

43.     On October 31, 2016, as a part of Plaintiff's workers'

compensation claim, Plaintiff participated in an independent medical exam, which

13

stated that Plaintiff's restrictions had changed to lifting no more than 25 pounds

frequently and 50 pounds occasionally, and being able to bend, squat, kneel, climb,

twist, push, and pull on an occasional to frequent basis.  Plaintiff disputed this

assessment.

44.    Despite knowing of Plaintiff's position that his restrictions were

permanent, on February 6, 2017, Defendant made a request to Plaintiff to provide

further medical information and gave Plaintiff an ultimatum of 15 days to return the

medical information to it, which request and short time Plaintiff alleges was retaliatory.

## IV.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### PLAINTIFF IS A QUALIFIED INDIVIDUAL WITH A DISABILITY
### AND WAS DENIED REASONABLE ACCOMMODATION

45.    Plaintiff incorporates by this reference all allegations listed in

paragraphs 1 through 44 above as if alleged in full herein.

46.    In order to state a prima facie case of failure to accommodate,

Plaintiff must allege facts which establish, or tend to establish,  that: (1) he has a

physical or mental impairment that substantially limits one or more of the major life

activities; (2) he was qualified to perform the essential functions of the job he held or

desired, with or without reasonable accommodation; (3) he requested a reasonable

accommodation or Defendant knew or should have known of his need for an

14

accommodation; and (4) Defendant refused, declined or failed to provide a reasonable accommodation. *See Sanchez v. Vilsack,* 695 F.3d 1174, 1177 (10th Cir. 2012).

47.     To establish the first element of a prima facie case, Plaintiff alleges that he has an impairment which is substantially limiting in a major life activity.

48.     Plaintiff alleges he is disabled in that he has a back impairment which is substantially limiting in the major life activities of lifting, carrying, pushing, pulling and working. Plaintiff's allegations satisfy the first element of the prima facie case.

49.     To establish the second element of a prima facie case, Plaintiff alleges that he is qualified for and able to perform the essential functions of the position he held or desired, with or without reasonable accommodation.

50.     Plaintiff alleges he was able to perform the essential functions of the position he held or desired with the accommodation of being placed on light duty. Furthermore, Plaintiff alleges he performed light duty in the wax department successfully for a period of time. Plaintiff's allegations satisfy the second element of the prima facie case.

51.     As set forth above, Plaintiff alleges he requested various reasonable accommodations. Plaintiff's allegations satisfy the third element of the prima facie case.

15

52.     The fourth element of a prima facie case requires Plaintiff to allege that he was refused or declined reasonable accommodation.

53.     Plaintiff alleges that he was refused or declined reasonable accommodation as follows: (1) when he was taken out of the wax department and made to perform light duty through the maintenance department rather than the wax department; (2) when his pay was not raised when he began performing duties through the maintenance department; (3) when he was placed on leave following the October 7, 2016 meeting; and (4) when he was terminated.

54.     Plaintiff alleges that light duty work was available in the wax department. Plaintiff alleges he was not accommodated when he was moved out of the wax department into the maintenance department. Plaintiff's allegations satisfy the fourth element of the prima facie case.

55.     Plaintiff alleges he requested to be able to perform light duty in the wax department. Furthermore, Mr. Hill alleges he was able to perform the essential functions of his position in the wax department (the position he held or desired) with the accommodation of being placed on light duty with certain restrictions and that he worked successfully performing such light-duty work in the wax department for a period of time. And Mr. Hill alleges that there was enough light-duty work was available in the wax department to keep him busy on a full-time basis. Thus, Mr. Hill

16

alleges that GSC failed to reasonably accommodate him when it moved him out of the wax department into the maintenance department and then fired him.

56.    Plaintiff's allegations satisfy each element of his prima facie case.

57.    GSC acknowledges that it had a duty to provide Mr. Hill with a reasonable accommodation.  The parties dispute whether GSC satisfied such duty by taking Mr. Hill out of the wax department where he had been working successfully prior to the injury and where he had been working productively after the injury and by requiring him to do menial tasks in another department.

58.    GSC may contend that the ADA didn't require it to offer Mr. Hill light duty in only the wax department, but that it could offer him light duty in other departments and, when it did, it fulfilled its obligations under the ADA, citing to *Smith v. Midland Brake,* 180 F.3d 1154 1177 (10th Cir. 1999) and *Gile v. United Air Lines,* 95 F.3d 492, 499 (7th Cir. 1996).

59.    Mr. Hill contends that such an involuntary reassignment is not a reasonable accommodation where: he wanted to stay working in the wax department, there was enough work in the wax department to keep him working on a full-time basis in the wax department and there was no need to assign him to work in any other

17

department and the work he was reassigned to do in the maintenance department was menial in nature and exceeded his restrictions.

60.     The parties' arguments frame the issue of what role the personal preferences of a disabled employee plays in the interactive reasonable accommodation dialogue vs. what role managerial discretion and the needs of an employer's business play in the reasonable accommodation dialogue.

61.     Mr. Hill acknowledges that the ADA requires the employer to provide some reasonable accommodation, but not necessarily the one the employee requests or prefers.  Mr. Hill contends that such a principle doesn't end the inquiry.

62.     Thus, Mr. Hill contends GSC's argument that it can do whatever it wants to do as long as it provides an accommodation is too simplistic.  It is too simplistic because it short circuits the interactive process and because it overlooks the principles that an accommodation such as a reassignment to a vacant position is a matter of last resort and such a reassignment, if no other accommodations are possible, must still be a <u>reasonable</u> accommodation.  *See Wright v. Runyon,* 2 F.3d 214 (7th Cir. 1994) (employer has to first offer a reasonable accommodation and that reassignment is an accommodation of last resort).  *Accord, see Burchett v. Target Corp.,* 340 F.3d 510 (8th Cir. 2003), *Cravens v. Blue Cross & Blue Shield,* 214 F.3d 1011 (8th Cir. 2000), *Aka v. Washington Hospital Center,* 156 F.3d 1284, 1301 (D.C. Cir. 1998).

18

63.     Mr. Hill concedes that the ADA's definition of reasonable accommodation may contemplate reassignment to a vacant position, but the concept of such reassignment to a vacant position contemplates reassignment to a vacant position in the department where the employee may be "based".

64.     Plaintiff alleges that, for him to have continued working on a light-duty basis in the wax department was possible. He asserts that he wanted to continue working full-time in the wax department, that he could have continued to work full-time in the wax department, and that there was plenty of work in the wax department to enable him to continue working in the wax department on a light-duty, full-time basis.

65.     When Plaintiff returned to work after his injury, Mr. Hill notified GSC of his willingness to work within his ongoing restrictions. GSC did accommodate Mr. Hill at first by having him perform light-duty work in the wax department, such as performing the leech out process and small parts injection. These duties allowed Mr. Hill to perform some of his job duties while still staying within his limitations and within "his" department, with the exception that the leech out process does require the lifting of a bag of citric acid weighing approximately 50 pounds on an occasional basis, but he could ask another employee to lift the bag for him.

66.     Plaintiff alleges that his supervisor in the wax department, Kristin Layton ("Layton"), would verify that there was enough work in the wax department for him to have enough to do and to continue his light-duty work in the wax department on a full-time basis.

67.     Plaintiff acknowledges that there may have been light duty in other departments (although not necessarily a vacant position), but when the company sent him to the maintenance department, the type of work it asked him to do was menial, demeaning work and not within his restrictions (performing duties such as picking up trash, washing windows, and other similar duties).  Petitioner alleges these duties were demeaning and not consistent with his restrictions.

68.     Thus, Plaintiff's contention that the reassignment at issue was not a reasonable accommodation is two-fold:  (1) that GSC was taking him out of the department where he had worked and had been working productively and wanted to stay; (2) that the light-duty work in the maintenance department was not really light-duty work, but manual and strenuous.  In other words, Mr. Hill alleges the reassignment at issue was not a reasonable accommodation.

69.     Plaintiff's allegations create disputes about whether the wax department had enough light-duty work to keep Mr. Hill busy on a full-time basis in the wax department, disputes about whether such light-duty work in other departments

20

was really light-duty work, and disputes about whether taking Mr. Hill out of an accommodation which was working and forcing him to do menial work in another department was a reasonable accommodation. And, because of such disputes, there are disputes about whether Mr. Hill justifiably refused/unreasonably refused to accept the reassignment and perform the other work. These disputes do not allow the Court to find, as a matter of law, that GSC provided a reasonable accommodation to Mr. Hill and that Mr. Hill unreasonably refused to accept it. That precludes a summary judgment on this issue. *See Reyazuddin v. Montgomery County,* 2015 U.S. App. Lexis 10032 (4th Cir. June 15, 2015).

70.     Plaintiff acknowledges that the ADA envisions an interactive process wherein both parties share information and focus on fixing the problem — *i.e.,* coming up with a reasonable accommodation that works for both the employer and the employee.

71.     GSC asserts, factually, that, after it took Mr. Hill out of the accommodation he had requested (which was working) and forced him to work in an assignment (which was not reasonable), GSC continued to participate in good faith in the interactive process and that Mr. Hill refused to engage in the interactive process in good faith.

21

72. Once again, GSC's argument is too simplistic. The basis for GSC's argument is its contention that, even though Mr. Hill's restrictions were permanent, it nevertheless requested Mr. Hill to provide updated medical information, giving him a short turnaround time and no resources with which to obtain updated medical information, and that it did all of this so it could determine if it could provide other reasonable accommodations to him.

73. Plaintiff's allegations throw all of those assertions into dispute. Mr. Hill counters by pointing out that his restrictions were permanent, that GSC had access to the October 31, 2016 IME, and that imposing such a short turnaround time to obtain updated medical information with no resources to obtain such medical information is not tantamount to him refusing to engage in the interactive process. Mr. Hill's evidence and the disputes they create do not allow the Court to find, as a matter of law, that Mr. Hill unreasonably refused to engage in the interactive reasonable accommodation dialogue.

74. Mr. Hill alleges that he was able to perform the essential functions of the position he both held and desired, which was in the wax department, with the reasonable accommodation of being placed on light duty with certain restrictions. He alleges he performed that job successfully for about two months after his return to work. That makes him a qualified individual with a disability.

22

75.    Plaintiff acknowledges that, if an individual with a disability refuses to accept an offer of a <u>reasonable</u> accommodation to perform the essential functions of a position he holds <u>or desires</u>, and, as a result of such rejection, is not able to perform the essential functions of the position, then, the individual will not be able to be considered as a qualified individual with a disability, citing *Jarvis v. Potter,* 500 F.3d 1113, 1121 (10th Cir. 2007).[1]

76.    Plaintiff alleges he did not refuse to accept the offer of an accommodation which was <u>reasonable</u>.

77.    Here, Mr. Hill's job restrictions were permanent.  His work restrictions precluded him from engaging in heavy lifting.  Whether heavy lifting was an essential function of the job is disputed.  But Mr. Hill's restrictions did not preclude him from performing the essential functions of light-duty work within the wax department or light-duty work in other departments (as long as such light-duty work was truly light-duty work).  So, Mr. Hill's evidence that he was able to perform the essential functions of the job <u>he desired</u> creates a genuine issue of material fact and does not allow the Court to find, as a matter of law, that Mr. Hill was not a qualified individual with a disability.

---

[1]The undersigned was the plaintiff's counsel in *Jarvis v. Potter.*

23

78.     Because his restrictions were permanent, because he was willing to work in the wax department in a light-duty setting within his restrictions and did not abandon his job, Mr. Hill alleges that he can show that GSC terminated him because of his disability.

79.     Plaintiff acknowledges that GSC has articulated a legitimate sounding reason for terminating his employment — that Mr. Hill refused to provide any update on his medical restrictions (which GSC concedes were permanent), that Mr. Hill refused to perform the job he was reassigned to (but did not refuse to perform the duties of the position he held or desired or refuse to perform duties which were truly light duty), and that he abandoned his job (even though he was willing to continue doing light-duty work in the wax department on a full-time basis or work in any other department doing light-duty work on a full-time basis (as long as such light-duty work was truly light-duty work).

80.     Plaintiff's allegations throw all of GSC's assertions into dispute. If Mr. Hill could have performed the essential functions of the job he held or desired, and if he was willing to and desired to return to the wax department, and if there was plenty of light-duty work in the wax department to keep him busy on a full-time basis, and if the alternative accommodation GSC offered him was not reasonable, then a fact finder could reasonably find that Mr. Hill did not abandon his job, but that GSC

24

terminated him because of his disability.  Mr. Hill's evidence creates a genuine issue of

material fact and does not allow the Court to find, as a matter of law, that there is no

causal connection between Mr. Hill's disability and his discharge.

81.     Plaintiff's allegations state a claim that Defendant failed to afford

him a reasonable accommodation.

## SECOND CAUSE OF ACTION
## PLAINTIFF WAS SUBJECT TO DISCRIMINATION DUE TO DISABILITY

82.     Plaintiff incorporates by this reference all allegations listed in

paragraphs 1 through 81 above as if alleged in full herein.

83.     In order to state a prima facie case of discrimination based on

disability, Plaintiff must allege facts which establish, or tend to establish,  that: (1) he is

disabled in that he has an impairment which is substantially limiting to a major life

activity; (2) he was otherwise qualified in that he could perform the essential duties of

the position he held or desired, with or without reasonable accommodation; (3)

Defendant subjected him to an adverse action and; (4) the circumstances surrounding

the adverse action give rise to an inference of discrimination on the basis of disability.

*Carter v. Pathfinder Energy Servs., Inc.,* 662 F.3d 1134, 1142 (10th Cir. 2011); *accord*

*Zwygart v. Bd. of Cnty. Comm'rs,* 483 F.3d 1086, 1090 (10th Cir. 2007).

25

84.     To establish the first element of a prima facie case, Plaintiff alleges that he is disabled in that he has an impairment which is substantially limiting to a major life activity.

85.     As set forth above, Plaintiff alleges he has a back impairment which substantially limits several major life activities.  As such, Plaintiff's allegations satisfy the first element of the prima facie case of discrimination based on disability.

86.     To establish the second element of a prima facie case, Plaintiff alleges that he qualified for and able to perform the essential functions of the position he held or desired in the wax department, with or without reasonable accommodation.

87.     Plaintiff alleges he could perform the essential functions of the position he held or desired, with or without reasonable accommodation.  Plaintiff's allegations satisfy the second element of the prima facie case of discrimination based on disability.

88.     Plaintiff alleges Defendant subjected him to an adverse employment action when it terminated his employment.  Plaintiff's allegations satisfy the third element of the prima facie case of discrimination based on disability.

89.     Plaintiff alleges the circumstances surrounding the adverse action support an inference of discrimination on the basis of disability.  Plaintiff alleges that,

had he not requested a reasonable accommodation and not complained when such accommodation was revoked, he would not have been terminated.

90.     Plaintiff's allegations satisfy the fourth element of the prima facie case of discrimination based on disability.

91.     Plaintiff's allegations state a claim that Defendant discriminated against Plaintiff on the basis of disability.

## THIRD CAUSE OF ACTION
## DEFENDANT SUBJECTED PLAINTIFF TO UNLAWFUL RETALIATION

92.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 91 above as if alleged in full herein.

93.     In order to establish a prima facie case of retaliation, Plaintiff must allege facts which establish, or tend to establish, that: (1) he engaged in protected opposition to discrimination; (2) contemporaneous with or subsequent to the protected activity, Defendant took adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse employment action. *See Argo v. Blue Cross and Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 126 S.Ct. 2405, 2414-15 (2006)).

94.     To establish the first element of a prima facie case, Plaintiff alleges that he engaged in a protected activity. "Although no magic words are

required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [anti-discrimination statutes]." *Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187, 1203 (10th Cir. 2008).

95.      The Tenth Circuit Court has held that Plaintiff must show that, at the time he engaged in the protected activity, he had a good faith and objectively reasonable belief that his activity was protected by the statutes. *Selenke v. Medical Imaging of Colorado,* (10th Cir. 2001) 248 F.3d 1249, 1252 *citing Standard v. A.B.E.L. Serv., Inc.,* 161 F.3d 1318, 1628 (11th Cir. 1998).

96.      Plaintiff alleges that he engaged in a protected activity when he requested a reasonable accommodation in the form of light duty and when he complained that the light duty he was made to perform outside of the wax department was retaliatory in nature, in that he found the duties to be beyond his restrictions and demeaning. Plaintiff's allegations satisfy that his activity was protected when he made the October 3, 2016 complaint of retaliation.

97.      Plaintiff also alleges that he engaged in a protected activity when he requested reasonable accommodation. The 10th Circuit has held that requests for reasonable accommodation are protected activity under the ADA. *See Wehrley v. Am. Fam. Mut. Ins. Co.,* 513 F.App'x 733, 740 (10th Cir. 2013) (citing *Jones v. U.P.S., Inc.,*

502 F.3d 1176, 1194 (10th Cir. 2007)).  Plaintiff's first request for accommodation occurred in March 2016 when he went on a leave of absence and accommodation discussions continued thereafter.  Thereafter, Plaintiff engaged in a protected activity when he requested the reasonable accommodation of continuing to perform light duty in the wax department and not in the maintenance department.  Plaintiff's allegations satisfy the first element of the prima facie case of retaliation.

98.     To establish the second element of a prima facie case. Plaintiff alleges that Defendant took adverse action against Plaintiff.  An adverse action is any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter Plaintiff or others from engaging in a protected activity.  In regards to retaliatory action, the courts have noted that adverse treatment also includes any act that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Rochon v. Gonzales,* 438 F.3d 1210, 1211 (D.C. Cir. 2006).

99.     Plaintiff alleges that Defendant subjected him to adverse actions when it transferred him outside of the wax department and made him perform such duties in the wax department as painting parking lot stalls and picking up trash, and when it issued the October 7, 2016 discipline to him and placed him on leave, and when it terminated his employment.

100. Plaintiff's termination, in and of itself, is sufficient to constitute an adverse action. Therefore, Plaintiff's allegations satisfy the second element of the prima facie case of retaliation.

101. To establish the third element of his prima facie case, Plaintiff alleges that a causal connection exists between the protected activity and the adverse action.

102. Plaintiff alleges the circumstances surrounding the termination support an inference that such a causal connection exists. A "causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by an adverse action". *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248,1258 (10th Cir. 2001) (quoting *Burrus v. United Tel. Co. of Kansas, Inc.,* 683 F.2d 339,343 (10th Cir. 1982)). Plaintiff alleges that, after Defendant placed Plaintiff on leave, there was no further accommodation discussions. Defendant just terminated Plaintiff's employment. Plaintiff's allegations support a causal connection between the protected activity and the adverse action. As such, Plaintiff's allegations satisfy the third element of the prima facie case of retaliation.

103. In the instant case, there is no dispute that Mr. Hill engaged in protected activity — he requested a reasonable accommodation. That's a form of protected activity.

104.    And in the instant case, there is no dispute that, after Mr. Hill

engaged in protected activity, GSC then took adverse action against him by terminating

his employment.

105.    With respect to Mr. Hill's claim of retaliation, the element in

dispute is causal connection.  In the instant case, GSC argues that Mr. Hill can't prove

causal connection with his evidence of temporal proximity because the accommodation

process lasted seven months.  Mr. Hill disagrees.  The accommodation process was a

continuous process.  He was engaging in protected activity that entire time.  And

despite his open-ended request for a reasonable accommodation, GSC terminated his

employment.

106.    The facts, viewed in the list most favorable to Mr. Hill,

demonstrate that, after Mr. Hill requested a reasonable accommodation and after GSC

accommodated him by allowing him to work in the position he held and desired, GSC

took him out of the potion he held and desired, where there was sufficient light-duty

work to keep him busy in that department on a full-time basis, and reassigned him to

do work in another department which exceeded his restrictions, then forced him to

leave the workplace and go on unpaid leave of absence, kept insisting that he provide

updates about his medical condition, even though he had reached maximum medical

improvement, and even though his restrictions were permanent, then provided him a

very short time frame to provide such medical updates, and no resources by which to obtain such updated medical information, then terminated his employment, even though he was ready, willing and able to continue doing light-duty work in the wax department and there was enough work in the wax department to keep him busy in the wax department on a full-time basis.

107.    Given these disputed facts and the inferences the Court is obligated to draw from such disputed facts, a fact finder could reasonably find that GSC's intention, from the beginning, was to get Mr. Hill out of the company. Why else would it force him out of his department?, Why else would it force him to do work what was not consistent with his limitations?, Why else would it insist on having Mr. Hill, who was at maximum medical improvement and had permanent restrictions, to go through the needless but expensive exercise of updating his (permanent) restrictions?, Why else would GSC not put Mr. Hill back to work, but force him to leave the workplace and stay on unpaid leave?, Why else would GSC accuse him of abandoning his job unless it was to retaliate against him for insisting on being afforded a reasonable accommodation?

108.    Plaintiff's allegations state a claim for retaliation.

## V. DAMAGES

32

109.   Mr. Hill alleges Defendant's actions and inactions have caused him various losses, injuries and other damages, including lost wages, lost benefits, financial distress, emotional distress and damages to his employability.

## VI.  RELIEF REQUESTED

Accordingly, based on the above allegations, claims and damages, Plaintiff requests the following relief, specifically an Order and Judgment:

1.   Declaring that Defendant discriminated against Mr. Hill on the basis of his disability and retaliated against him, in violation of the ADA;

2.   Awarding Mr. Hill "make whole" relief, including awarding Mr. Hill lost wages and benefits from the time Defendant terminated Mr. Hill until it reinstates him;

3.   In lieu of reinstatement, awarding Mr. Hill the lost wage and lost benefit differential from the time Defendant terminated Mr. Hill until Mr. Hill secures comparable employment, or for a period of five years, whichever occurs first;

4.   Awarding Mr. Hill his reasonable attorney's fees and costs;

5.   Awarding Mr. Hill such other relief as may be just and equitable.

DATED this _19_ day of June, 2020.

/s/ David J. Holdsworth
David J. Holdsworth
*Attorney for Plaintiff*